IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,
v.                                          CASE NO. 1:00cr36-SPM/AK

WILLIAM CLARK JONES,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 110, Defendant William Clark Jones' motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The Government has filed its response, Doc. 114, and Defendant has filed a reply. Doc. 116. The Government has also submitted the affidavit of trial counsel, Doc. 117, This matter is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be granted.

## BACKGROUND

Jones and a co-defendant were indicted for conspiracy to possess with intent to distribute more than 50 grams of cocaine base. Doc. 1. The indictment charged that the conspiracy began "from a date unknown, but at least by February 1, 2000, and continu[ed] until on or about April 3, 2000...." *Id*.

The day after Jones' first appearance and arraignment, the Government filed a notice of intent to seek enhanced penalties. Doc. 20. In pertinent part, the notice stated:

> Defendant has been charged with one count of conspiracy to possess with the intent to distribute cocaine and cocaine base....Defendant would normally be subject to a penalty of imprisonment of not less than ten years or more than life imprisonment, a fine of up to $4,000,000, and a five year term of supervised release.
>
> On or about September 9, 1992, WILLIAM CLARK JONES was convicted and sentenced in the United States District Court for the Northern District of Florida for the felony drug offenses of one count conspiracy to possess with the intent to distribute cocaine, and three counts of possession with the intent to distribute cocaine, all in Case No. 92-01012.[1]
>
> * * *
>
> It is believed that these convictions will subject defendant to a **mandatory term of life imprisonment** without release and $8,000,000 fine on Count One.

*Id*. (emphasis added). Counsel did not challenge the Government's assertions. *See* 21 U.S.C. § 851(c) (if defendant denies any allegation of information of prior conviction, he shall file written response to information).

Shortly thereafter, Defendant apparently reached an agreement with the Government to plead guilty because the Court scheduled a change of plea hearing for him for September 6, 2000. Doc. 23. On that date, the parties appeared, and Defendant's attorney advised the Court that Defendant, who had previously been released on bond, had a positive drug test and requested a continuance of trial. Doc. 26. The Court continued the trial and ordered Defendant

---

[1] According to the Presentence Report, Defendant pled guilty to Count 1 of the indictment, conspiracy to distribute and possession with intent to distribute cocaine and cocaine base, and the United State Attorney dismissed Counts 9, 12, and 13, possession with intent to distribute cocaine, at sentencing.

detained.[2]  *Id*.  The petition for violation of pretrial conditions was filed the following day and identified two positive tests for marijuana use and an arrest for leaving the scene of an accident and driving under the influence of alcohol.  Doc. 27.  A revocation hearing was immediately scheduled for September 25, 2000.  Doc. 28.  In the interim, Defendant's counsel sought an order directing the drug testing company to produce Defendant's test results, to retest Defendant's urine samples, and to submit Defendant's urine samples to an independent testing facility.  Doc. 32.  The Court granted the motion.  Doc. 33.  On Defendant's motions, the Court continued the revocation hearing twice before Defendant finally waived his objection to detention and requested that the hearing be cancelled.  Doc. 43.  Although the Court had granted a second continuance of trial, Doc. 36, Defendant moved for a third continuance approximately six days before trial was scheduled to begin.  Doc. 49.  As grounds for this request, counsel for Defendant advised the Court that "Defendant is continuing his cooperation with the government.  More time is needed to determine whether his cooperation will rise to the level of substantial assistance."  *Id*.  The Court summarily denied the motion, Doc. 51, and the case proceeded to trial.

On the first day of trial, Defendant sought an in limine ruling to exclude any mention of his nickname, his prior convictions, and "[s]pecific drug amounts."  Doc. 55.  The Court denied the motion in limine with regard to the nickname and the drug amounts, and the Government agreed not to mention the prior convictions unless Defendant testified.  Doc. 89 at 11 & 16.

In her opening statement, counsel for Defendant conceded Defendant's guilt:

This man is guilty....The fact is it's undisputed that my client conspired to

---

[2]On this same date, Defendant's co-defendant pled guilty to Count 1 of the indictment. Docs. 22 & 25.

>distribute crack cocaine....What you need to decide...is...the amount that this man should be held responsible for.  That's it.  We could check that verdict form off right now that he's guilty of conspiring.  He is.

Doc. 89 at 86-87.  After a two-day trial, Defendant was found guilty of Count 1, with the jury specifically finding that the amount of drugs involved in the conspiracy was "[m]ore than fifty (50) grams of a mixture containing cocaine base...."  Doc. 59.

Shortly before sentencing, Defendant filed objections to the Presentence Report.  Doc. 68. Of particular importance, Defendant lodged the following objection:

>The defendant met with agents of the DEA prior to and immediately following his arrest.  The defendant acknowledged and admitted the full extent of his involvement in the instant offense, and assisted the authorities in the investigation of his own misconduct; therefore, the defendant should receive a downward adjustment of three points for acceptance of responsibility....[A]lthough Mr. Jones did go to trial in this case, it was not by choice.  The defendant made repeated requests to cooperate with the government and provide substantial assistance in this case, which was rejected by the Assistant United States Attorney after the defendant tested positive for marijuana.  In addition, at trial, the defendant did not deny that he was guilty of the offense conduct, but instead argued that his involvement should be limited to 42 grams, and that the time period to consider his involvement in the conspiracy should be limited to the time period contained within the Indictment, "February 1, 2000 to April 3, 2000."  It should be further noted that an enhancement was filed by the prosecutor finding that the defendant would be subject to a mandatory minimum life sentence in this case, **giving the defendant no choice but to proceed to trial in this case**.

Doc. 68 (emphasis added).  Defendant also moved for a downward departure, stating, in pertinent part:

>The defendant did immediately provide information and cooperate with DEA in this case, even prior to his arrest on these charges.  Unfortunately, he also tested positive for marijuana in a test conducted by probation.  Upon receiving the positive test results, Assistant United States Attorney Frank Williams, stated he had no alternative but to withdraw [his] offer of 5K1.1 assistance.  The fact remains, the defendant did cooperate: he was debriefed on two occasions, and information he supplied may very well have provided substantial assistance in the investigation or prosecution of others who committed offenses.

*Id*.

On February 5, 2001, Defendant appeared before the Court for sentencing. At that time, the Government stated:

> [T]he United States had filed a motion that the defendant, in fact, was subject to a mandatory life term of imprisonment in this case.
>
> The issue really wasn't addressed in the PSI, although probation reached a different opinion. Their opinion is based upon case law that because the defendant was convicted on the one offense.[3] So he, in fact, according to probation, does not qualify for the mandatory life. And I'm not going to dispute that here today.

Doc. 85 at 11-12. The Court rejected Defendant's request for any downward departure or adjustment and sentenced him to 360 months, which represented the low end of the Guidelines range. Doc. 77. Specifically, the Court found:

> As to acceptance of responsibility, the defendant objects to paragraphs 16 and [24] of the presentence report regarding defendant's failure to accept responsibility. This objection is overruled.
>
> The court finds two reasons why defendant should not be given a reduction for acceptance of responsibility. First, the defendant used illegal substances while on bond....
>
> Second, the defendant has never accepted responsibility for the full drug amount involved in his relevant conduct....
>
> The court notes that even if the defendant's acceptance of responsibility objection were sustained, his offense level would remain the same due to his career

---

[3] Although the Government was not very clear on this point, the Court notes that on the same date that Defendant pled guilty to the conspiracy count in 1:92CR1012, he also pled guilty to possession of a firearm affecting interstate commerce in 1:92CR1022. According to the Presentence Report, when Defendant was arrested on the charges in 1:92CR1012, he was found to be in possession of marijuana and a .38 caliber derringer. However, there is nothing in the Report to indicate that Defendant was convicted of a drug felony in 1:92CR1022, and despite its best efforts to locate pertinent documents in both 1:92CR1012 and 1:92CR1022, the Court has been unsuccessful in those endeavors. Be that as it may, the conviction in 1:92CR1022 did not form a part of the Government's enhancement notice.

offender status; therefore, the same sentence would be imposed.[4]

Doc. 85 at 17.

Defendant, represented by different appellate counsel, appealed, arguing, *inter alia*, that the Court constructively amended his indictment by admitting evidence of the conspiracy and drug quantities that predated the initiating date in the indictment and by instructing the jury that it was sufficient that the Government prove that Defendant committed the offense on a date reasonably near the date alleged in the indictment. Doc. 108. The Eleventh Circuit rejected Defendant's arguments and affirmed his conviction and sentence. *Id*.

The instant motion to vacate followed. Doc. 110. On this occasion, Defendant argues, in part, that his trial counsel rendered ineffective assistance of counsel by failing to investigate and assess Defendant's criminal history "in order to properly and precisely advise him how it would impact on any possible sentence imposed. *Id*. In support of this argument, Defendant repeatedly maintains that he "never had any intentions in going to trial, nor did he want to...but [counsel] told [Defendant] that he had no choice." *Id*. Furthermore, he argues that counsel failed to provide him "with the crucial facts that he required in order to evaluate [counsel's] opinion." *Id*. More specifically, he states that once counsel was aware that the Government was not going to extend to Defendant an opportunity to cooperate, "she told [Defendant] that he was facing a mandatory life and that he had no choice but to go to trial." *Id*. In Defendant's view, "that was not the case here because [he] did not fall under the mandatory life, and had counsel researched [his] criminal history she would have known this; and therefore, advised [him] accordingly." *Id*.

---

[4]This appears to be an erroneous conclusion. According to the applicable Guidelines Manual, "If an adjustment [for acceptance of responsibility] applies, decrease the [career offender] offense level by the number of levels corresponding to that adjustment." U.S. Sentencing Guidelines Manual, § 4B1.1(b) (2000).

Additionally, Defendant submits

> that it was not sufficient for [counsel] to relay to [Defendant] that he was facing "life" without sitting down and explaining to him how the criminal history would have an impact on any possible sentence whether he pled guilty or went to trial. By telling [Defendant] that he was facing mandatory life; and therefore, he had no choice but to go to trial, she deprived [Defendant] of his right to make an informed decision whether to plead guilty or go to trial. Moreover, in this case [Defendant] did not fall under the mandatory life sentence. That was an error on behalf of [counsel] because she did not do her own criminal history evaluation on behalf of her client.

*Id*. Moreover, he maintains that

> from the outset [he] never wanted to go to trial. His first intentions [were] to cooperate with the government, but when he found out that the government wasn't going to fulfill their promises [Defendant] conveyed to his attorney that he wanted to plead guilty. [Counsel's] response to [Defendant] was that he could not plead guilty because if he pled guilty he would have to plead guilty to life in prison. She proceeded with telling [Defendant] that he had no choice but to go to trial in this case. This misinformation was absurd because, at the very least, [Defendant] could have plead guilty in open court and would have gotten an adjustment for acceptance of responsibility. Had [counsel] conducted her own evaluation of the defendant's criminal history she would have known that the government made [an] error when they believed the defendant's prior convictions would subject him to a mandatory life imprisonment....[Defendant] did not fall under the mandatory minimum life. However, if [counsel] would have known this and properly advised the defendant, she would have told him that his proffer statements had eliminated his ability to present a defense and destroyed any chance he had of prevailing at trial and therefore, his only viable option was to plead guilty.
>
> [Counsel's] failure to provide the defendant with meaningful advice deprived [him] of the ability to evaluate his options intelligently and resulted in [Defendant] making the ill-fated and ill-advised decision not to plead guilty and proceed to trial.

*Id*.

> Again, Defendant explains:
>
> [Counsel] failed to inform the defendant of the specific benefits he would receive if he pled guilty versus going to trial. Specifically, had he pled guilty the benefit would have been that he would have gotten 3 points off for acceptance of responsibility. Instead, [counsel] told [Defendant] that the only plea was to "life

> in prison," but that was <u>not</u> the case here....[Counsel] misinformed [Defendant] and didn't effectively represent him and he lost the chance to get the 3 points for acceptance....The faulty information that [counsel] gave [Defendant] about him facing mandatory life prior to trial, and facing life if he was to plead guilty was significant in [his] decision not to plead and to go to trial....

*Id*.

Finally, he reiterates that he "didn't want to go to trial in the first place. He was led to believe by his attorney that he had no other choice but to go to trial." *Id*.

In response, the Government frames Defendant's argument as a contention that "his counsel rendered ineffective assistance by *overestimating* his sentence and informing [him] that he was subject to a mandatory Life sentence." Doc. 114 at 7 (emphasis in original). In the Government's view, because counsel properly advised Defendant that he was facing a **possible** life sentence, she did not act deficiently by misadvising him that he was facing a **mandatory** life sentence. *Id*. at 8-9. Even if this were deficient performance, the Government argues that Defendant suffered no prejudice because he was not entitled to a reduction for acceptance of responsibility. *Id*. at 9.

In reply, Defendant counters that if he had

> been better or correctly informed by his trial counsel, he would <u>have</u> entered a guilty plea instead of going to trial. Then, more than likely, [Defendant] would have received a lighter sentence, hence three points of acceptance of responsibility. Therefore, the faulty information about [Defendant] facing a mandatory Life sentence was significant in [Defendant's] decision not to plead guilty and to go to trial, which is ineffective assistance under the law.

Doc. 116 at 3 (emphasis in original). Furthermore,

> Although it is true that [Defendant's] attorney advised him that he was facing a mandatory life sentence[,] [i]t should be known that [Defendant] was never subject to mandatory Life. Meaning [Defendant] had other options that were <u>never</u> explored [or] discussed with him.
>
> The Defendant was prejudiced by going to trial. Because prior to trial, the

> defense would have been in a better position to negotiate a plea with the government, and receive a reduction for acceptance of responsibility....[T]he government is incorrect when they state, even if the reduction was appropriate, the sentencing court noted it would have not impact on the sentence [Defendant] received....According to the PSR, [Defendant's] offense level was <u>37</u> minus <u>3</u> points, that would have put [Defendant] at a level <u>34</u> which is 262-327 months. That is <u>33 months</u> difference.

*Id*. at 4 (emphasis in original).

Because this issue is, in this Court's opinion, dispositive of Defendant's motion, a discussion of the other issues raised in his motion is not necessary.

## **DISCUSSION**

A general discussion of the standards governing ineffective assistance claims is appropriate at this juncture. That task involves a consideration of *Strickland v. Washington*, 466 U.S. 668 (1984).

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The Court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The Court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at

689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, the cases in which a defendant can properly prevail on an ineffective assistance of counsel claim "are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001). "The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler,* 218 F.3d at 1313. "[O]missions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Id*. (citation omitted).

An attorney's failure to properly advise her client about sentencing exposure may constitute ineffective assistance of counsel. *United States v. Ridgeway*, 321 F.3d 512 (5th Cir. 2003) (citing *Teague v. Scott*, 60 F.3d 1167 (5th Cir. 1995)). In this context, the issue of ineffectiveness usually arises where counsel fails to advise her client of his maximum sentencing exposure. Here, there is no real dispute that instant trial counsel informed Defendant "of the **possible** maximum sentence." Doc. 117 (emphasis added). It is clear from the record, however, that counsel went beyond telling Defendant "of the **possible** maximum sentence," instead framing Defendant's sentencing exposure as a **mandatory** life sentence. She does not deny Defendant's assertions in this regard, *see* Doc. 117, and indeed, she cannot dispute the record evidence that, after the Government's enhancement notice, she did not challenge the Government's evaluation of Defendant's prior criminal record, and that based on the Government's unchallenged notice, she believed that her client had "no choice but to proceed to trial in this case." Doc. 68.

According to the Presentence Report, Defendant was never subject to a mandatory life sentence, as it does not appear that he had multiple drug convictions in 1:92CR1012, as represented by the Government in its enhancement notice. Furthermore, even if he did have multiple drug convictions in that case, the law in the Eleventh Circuit is well-established that if a defendant's prior felony drug convictions resulted from acts forming a single criminal episode, they are treated as a single conviction for purposes of statutory enhancement. *United States v. Rice*, 43 F.3d 601 (11th Cir. 1995). Thus, for counsel to accept the Government's enhancement notice without question or apparent investigation and then to advise Defendant that he was facing a **mandatory**, as opposed to a possible maximum, life sentence when that was not the case was clear error. Here, counsel failed to perform basic research into the facts and legal

issues surrounding the Government's enhancement notice and Defendant's criminal record, and she apparently did not appreciate the ramifications of these errors.. It is insufficient for counsel to discuss with her client the Guidelines and their application if she does not have a clear notion of her client's specific situation. The law requires counsel to research the relevant law and facts and to make informed decisions regarding the fruitfulness of various avenues. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004); *see also Strickland*, 466 U.S. at 690-91; *United States v. Williamson*, 183 F.3d 458 (5th Cir. 1999). When a defendant "'lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to [plead] or take his chances in court.'" *Grammas*, 376 F.3d at 436 (quoting *Teague*, 60 F.3d at 1171). At no time can the Government prevent a defendant from pleading guilty straight up to all counts in an indictment. Instant Defendant was charged in a one-count indictment, and he could have pled guilty at any time to that one count without a plea agreement. Certainly, to have qualified for a substantial assistance departure, Defendant required the Government's acquiescence. However, even after it became clear that the Government was not going to offer Defendant further opportunity to cooperate because of his alleged marijuana use while on pretrial release, Defendant still could have pled guilty in a straight up plea before the Court and then challenged the drug amounts during sentencing. When Defendant was erroneously advised that he was facing a mandatory life sentence, that if he pled guilty, he would have to plead to a life sentence, and that he had no choice but to go to trial, Defendant was not provided with the correct information necessary for him to make an intelligent decision regarding whether to go to trial, and thus, trial counsel acted deficiently in this case.

  Having found that counsel's performance fell below an objective standard of reasonableness, the Court must now determine whether, but for counsel's unprofessional errors,

there is a reasonable probability that the outcome of the proceedings would have been different. As applied to the instant case, the question is whether there is a reasonable probability that if Defendant, who has never contested his guilt, had pled guilty, rather than going to trial, he would have received a lesser sentence via a reduction for acceptance of responsibility. After careful consideration, this Court believes that there is indeed a reasonable probability that if Defendant had pled guilty, he would have received some amount of credit for acceptance of responsibility even if all other facts remain unchanged, i.e., he is not given any credit for substantial assistance, he is charged with positive drug tests, and he objects to the drug quantity calculation. Certainly, if Defendant had known that he was not facing a mandatory life sentence, he might have reconsidered challenging the drug quantities at all, especially in light of the fact that Defendant's failure to "accept[ ] responsibility for the full drug amount involved in his relevant conduct," Doc. 85, weighed against the Court's granting Defendant any credit for acceptance of responsibility after his trial. While this Court is not in a position to determine whether the Court would have granted Defendant a reduction of two or three points if he had not gone to trial, a reduction of either amount, which would not have been foreclosed by Defendant's career offender status, *see* U.S. Sentencing Guidelines Manual, § 4B1.1(b) (2000), would have significantly affected his sentence. Even if the Court had granted only a two-point reduction, the Guidelines range would have been 292-365 months, and it is certainly reasonable to believe that the Court would not have sentenced Defendant to the upper end of that range. As the Supreme Court has recognized, "Any amount of jail time has Sixth Amendment significance." *Glover v. United States*, 531 U.S. 198, 203 (2001). Thus, even if Defendant's sentence had been reduced only to 328 months, which represents a mid-range sentence, this would have been a significant difference in the outcome of the proceedings.

While the Court cannot say with certainty that upon resentencing Defendant will receive any reduction for acceptance of responsibility, it does not have to reach that threshold to find that Defendant was prejudiced by counsel's deficient performance.  Rather, the Court must only find a "probability sufficient to undermine confidence in the outcome" of the original proceeding, *Strickland*, 466 U.S. at 694, and the Court believes that Defendant has reached that threshold.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED**:

That the motion of Defendant William Clark Jones to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, Doc. 110, be **GRANTED**;

That the sentence imposed on February 5, 2001, be **VACATED**;

That Defendant be **RESENTENCED** as if he had entered a plea of guilty to Count 1 of the indictment and had not gone to trial;

That counsel be **APPOINTED** to represent Defendant if a sentencing hearing is necessary.

**IN CHAMBERS** at Gainesville, Florida, this __2nd__ day of May, 2005.

s/ A. KORNBLUM
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**